IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY TWIGG, | : | CIVIL NO. 1:14-CV-1787 |
| Plaintiff | : | Chief Judge Conner |
| v. | : | |
| PRIME CARE, WARDEN MARY SABOL, DR. VON KIEL, PATRICIA BENNETT, | : | |
| Defendants | : | |

# MEMORANDUM

Plaintiff Gary Twigg ("Twigg"), an inmate formerly housed at the York County Prison, commenced this action on September 12, 2014, pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as defendants are PrimeCare Medical, Inc., ("PrimeCare"), Erik Von Kiel, D.O., Patricia Bennett (collectively, the "medical defendants"), and Warden Mary Sabol. (Id.) Before the court are two motions (Docs. 27, 34) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the medical defendants and defendant Sabol, respectively. For the reasons set forth below, the court will grant both motions.

## I.   Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II. **Allegations of the Complaint**

Twigg alleges that between May 8, 2012, and September 21, 2012, while he was confined at the York County Prison, defendants violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. (See Doc. 1 at 2). Specifically, Twigg alleges that he received inadequate medical treatment for his gastrointestinal condition. (Id. at 4).

Twigg states that he submitted several sick call requests to defendant Bennett. (Id. at 2). He alleges that she ignored his complaints and grievances, and placed him in a medical observation cell. (Id.) Twigg states that defendant Von Kiel treated him in September 2012, almost five (5) months after his complaints began. (Id.) Twigg alleges that defendant PrimeCare is responsible for the alleged violation of his constitutional rights because it employs defendants Bennett and Von Kiel. (Id.)

Twigg asserts that defendant Sabol was aware that he was in pain. (Id.) He claims that that his family contacted defendant Sabol to inform her of his suffering. (Id.) Twigg further claims that defendant Sabol knew he was being transferred to another prison and, therefore, the York County Prison would not have to pay for his medical treatment after his transfer. (Id.) Due to his pain, Twigg allegedly could not go to yard, religious services, or attend visits and other programs. (Id. at 2-3).

3

On September 12, 2014, Twigg filed the instant action, seeking compensatory and punitive damages for defendants' deliberate indifference to his medical needs, and defendants' violation of his First Amendment rights. (Id. at 3).

III. **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

    A. **Medical Defendants' Motion to Dismiss**

        1. *Deliberate Indifference to Medical Needs*

Twigg claims that the medical defendants' failure to provide him with necessary medical treatment during his incarceration violates his rights under the

4

Eighth Amendment.[1]  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).  To establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale, 318 F.3d at 582 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).  In the instant action, the medical defendants concede that Twigg has a serious medical condition.  (Doc. 28 at 4).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

---

[1] Twigg does not indicate whether the incidents at issue occurred when he was a pretrial detainee or a sentenced inmate.  Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  However, the Fourteenth Amendment provides "at least as much protection as does the Eighth Amendment," and in cases involving allegations of inadequate medical care, the Third Circuit Court of Appeals typically analyzes both claims using the Eighth Amendment standard.  Gannaway v. Berks Cty. Prison, 439 F. App'x 86, 89 n.2 (3d Cir. 2011); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003).  Therefore, the court will analyze Twigg's claims pursuant to the Eighth Amendment standard.

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Estelle, 429 U.S. at 106; Spruill v. Gillis, 372 F.3d 218, 237 (3d Cir. 2004); Monmouth Cty., 834 F.2d at 346.

The allegations against defendants PrimeCare, Von Kiel, and Bennett are insufficient to state an Eighth Amendment inadequate medical care claim. The facts set forth in the complaint reveal that Twigg submitted several sick call requests to the medical department and was treated by defendants Bennett and Von Kiel. (Doc. 1 at 2). Attached to the complaint are sick call requests, inmate grievances, and responses thereto, which confirm that Twigg was treated by the medical department on several occasions. (See id. at 5-32). Specifically, Twigg's records reveal that: (1) defendant Bennett treated Twigg for hemorrhoids; (2) Twigg was placed in a medical observation cell for his own protection to be properly observed; (3) Twigg was put on a special vegetarian diet per his request; (4) Twigg received medication regularly for his hemorrhoids and gastrointestinal pain, his stool samples were tested, and he underwent blood tests and received an x-ray; (5) defendant Von Kiel treated Twigg; and (6) Twigg underwent a consultation with a gastrointestinal specialist outside of the prison and was scheduled to undergo a colonoscopy. (Id.) The documents attached to the complaint also reveal that Twigg refused stool sample testing and refused an x-ray on two (2) occasions. (Id. at 28-31).

It is clear from the allegations, and the documents attached to the complaint, that the medical defendants attended to Twigg's medical needs and that Twigg is simply dissatisfied with the course of treatment provided to him. In his brief in opposition to the medical defendants' motion to dismiss, Twigg acknowledges that he was given medication, though he claims that it was "ineffective." (Doc. 30). He further acknowledges that he was treated by the medical department and an outside medical provider, though he states they were "superficial." (Id. at 1).

The Constitution does not guarantee a prisoner medical treatment of his choice. See Spruill, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation). The allegations in Twigg's complaint amount to nothing more than his subjective disagreement with the treatment decisions of medical staff. See Carpenter v. Kloptoski, No. 08-CV-2233, 2012 WL 983565, at *6 (M.D. Pa. Mar. 22, 2012) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"). Claims of medical malpractice and disagreements as to the proper course of medical treatment do not satisfy the deliberate indifference standard. See Monmouth Cty., 834 F.2d at 346. Courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Even if the allegations in the complaint amounted to negligence, simple negligence cannot serve as a predicate to liability under § 1983. See Rouse, 182 F.3d at 192 ("It is well-settled that claims of negligence . . . , without some more

culpable state of mind, do not constitute 'deliberate indifference.'" (citing Estelle, 429 U.S. at 105)). Construing the complaint in the light most favorable to Twigg, the allegations reveal only a dispute over the adequacy or propriety of medical care. Cf. Baez v. Falor, No. 09-1149, 2012 WL 4356768, at *34 (W.D. Pa. 2012) (holding that inmate's complaints that the prison failed to refer him to a gastroenterologist and failed to adequately address his pain did not amount to deliberate indifference to his medical needs, but rather a disagreement with the treatment provided). Based on the foregoing, Twigg failed to establish that the medical defendants were deliberately indifferent to his serious medical needs. The court will grant the medical defendants' motion to dismiss this claim.

2. *Monell* Claim

To hold defendant PrimeCare liable under § 1983, Twigg must plead that PrimeCare maintains a policy, practice, or custom that lead to the alleged constitutional violation. See Natale, 318 F.3d at 583-84; Adonai-Adoni v. King, No. 07-3689, 2009 WL 890683, at *2 (E.D. Pa. 2009) (noting that a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom); see also Carpenter, 2010 WL 891825, at *8 (holding that a § 1983 claim against a private medical service solely on the basis that it was responsible for providing health care is subject to dismissal). Defendant PrimeCare, a private corporate entity, cannot be held liable for acts of its employees under a theory of *respondeat superior* or vicarious liability. See Natale, 318 F.3d at 583 (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).

8

Twigg's complaint fails to identify any policy or custom of PrimeCare that caused the alleged constitutional violations. The only allegation against defendant PrimeCare is that "PrimeCare was responsible because they employ Patricia Bennett and Dr. Von Kiel." (Doc. 1 at 2). Thus, Twigg's claim against PrimeCare is squarely premised upon *respondeat superior*, and his attempt to sue PrimeCare simply as the entity responsible for providing health care is insufficient to establish a § 1983 claim. Therefore, the claim against defendant PrimeCare will be dismissed.

### 3. *First Amendment Exercise of Religion*

The medical defendants seek to dismiss Twigg's First Amendment claim for failure to state a viable cause of action. (Doc. 27 at 2). The First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. CONST. amend. I. The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment, Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972), imprisonment necessarily restricts some constitutional rights, including the First Amendment's right to the free exercise of religion. O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987). It is well-established that only those beliefs

9

which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); see also Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) (enumerating three indicia of religion as: (1) an attempt to address "fundamental and ultimate questions" involving "deep and imponderable matters"; (2) a comprehensive belief system; and (3) the presence of formal and external signs like clergy and observance of holidays).

Sincerely held religious beliefs are entitled to Constitutional protection. However, Twigg presents no evidence that he has a sincerely held religious belief and fails to even delineate his religion. (See Doc. 1 at 3). Twigg's entire statement of claim regarding a violation of his First Amendment rights is that he "could not attend religious services." (Id.)

Assuming *arguendo* that Twigg had identified a sincerely held religious belief, he must also show that a prison regulation or practice violates the right to free exercise of religion by demonstrating that it violated the "reasonableness test" set forth in Turner, 482 U.S. at 89, and O'Lone, 482 U.S. at 349. This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners, and the effect on prison resources in general; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid

10

penological interests.  Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.  "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity."  DeHart, 227 F.3d at 59.  However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, Thornburgh, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice.  Williams v. Morton, 343 F.3d 212, 217 (2003) (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

As noted, Twigg alleges that defendants violated his First Amendment rights because he was unable to attend religious services due to his gastrointestinal pain.  There is no allegation that the medical defendants were personally involved in this purported unconstitutional conduct.  Nor is there any evidence that the medical defendants played an "affirmative part" in the alleged denial of Twigg's First Amendment rights.  Any claim against the medical defendants is wholly derivative of Twigg's Eighth Amendment claim, which the court has rejected.  Consequently, the medical defendants are entitled to dismissal of this claim.

### 4. *Religious Land Use and Institutionalized Persons Act*

Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest,"

11

and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

Although Congress intended that RLUIPA be construed "in favor of broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), Congress also "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723. Congress indicated that in the event an inmate's request for religious accommodation would "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." Id. at 726.

Twigg fails to indicate whether the defendants are sued in their individual or official capacities. Regardless, he cannot recover money damages against defendants in either capacity under RLUIPA. In Sharp v. Johnson, 669 F.3d 144, 155 (3d Cir. 2012), the United States Court of Appeals for the Third Circuit held that RLUIPA "does not permit an action against [d]efendants in their individual capacities." Hence, Twigg cannot maintain a RLUIPA claim for monetary damages against the instant defendants in their individual capacities.

Nor can Twigg recover monetary damages against the defendants in their official capacities, as such claims are barred by the Eleventh Amendment. The

Eleventh Amendment bars claims for monetary damages sought against a state official acting in his or her official capacity absent a valid abrogation by Congress or consent of the State. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (holding that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court"). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under RLUIPA, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. See Scott v. Beard, 252 F. App'x 491, 492-93 (3d Cir. 2007) (nonprecedential) (finding that an official capacity RLUIPA claim for monetary damages against a Pennsylvania state official is barred by the Eleventh Amendment because it is essentially a claim against the state itself). Thus, the defendants are entitled to dismissal on the RLUIPA claim lodged against them in their official capacities.

### B. Defendant Sabol's Motion to Dismiss

Defendant Sabol seeks dismissal of the complaint based on Twigg's failure to state a valid cause of action. (See Docs. 34, 35). In the alternative, defendant Sabol maintains that Twigg failed to exhaust the available administrative remedies. (Id.) For the reasons set forth below, the court will grant the motion based on failure to state a claim upon which relief can be granted; thus, the court does not consider

defendant Sabol's alternative argument that Twigg failed to exhaust administrative remedies.[2]

Initially, defendant Sabol argues that Twigg's allegations of unconstitutional conduct before September 12, 2012, are barred by the statute of limitations. (Doc. 35 at 4-6). "A statute of limitations defense may serve as the basis for a Rule 12(b)(6) motion 'where the complaint facially shows noncompliance with the limitations period.'" McSpadden v. Wolfe, No. 07-1263, 2008 WL 910010, at *4 (E.D. Pa. 2008) (citing Oshiver, 38 F.3d at 1385 n.1). It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985); Urrutia v. Harrisburg Cty. Police Dep't, 91 F.3d 451, 457 n.9 (3d Cir. 1996). In Pennsylvania, the statute of limitations for personal injury actions is two years. See 42 PA. CONS. STAT. § 5524.

However, the date when a cause of action accrues remains a question of federal law. Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995). Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). The limitations period begins to run when a plaintiff has sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000). Under Gordon, a "claim accrues

---

[2] Moreover, although defendant Sabol raises the issue of exhaustion in her motion to dismiss, she does so in summary fashion. (See Doc. 35 at 6-7). The court concludes that the record at this juncture is insufficiently developed to determine whether Twigg exhausted his administrative remedies as required by 42 U.S.C. §1997(e).

14

upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Id.

Twigg alleges that between May 8, 2012, and September 21, 2012, while confined at the York County Prison, defendants violated his constitutional rights. (Doc. 1 at 2). The instant complaint was filed on September 12, 2014. The statute of limitations would appear to preclude any claims relating to care provided prior to September 12, 2012. As acknowledged by Twigg in the complaint, on "September 21, 2014 [his] 2 year deadline is over." (Id. at 4). The complaint fails to set forth dates as to when defendant Sabol allegedly violated Twigg's constitutional rights. Regardless, viewing all claims lodged against defendant Sabol, the court finds that the complaint fails to set forth allegations warranting relief against her.

Supervisory officials, such as defendant Sabol, can only be held liable for a civil rights violation if they "have personal involvement in the alleged wrong." Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The complaint alleges that defendant Sabol knew Twigg was in pain "because medical answers to her" and because his family informed her of his medical situation. (Doc. 1 at 2). Despite defendant Sabol's purported knowledge of his pain, Twigg asserts that she "allowed" him to suffer. (Id. at 3). Twigg further alleges that defendant Sabol knew the York County Prison would not have to pay for his medical expenses after he was transferred to another facility. (Id. at 2).

Twigg seeks to impose liability on defendant Sabol because she was aware of his alleged pain and she failed to take action. However, a prisoner's allegation that

15

prison officials and administrators responded inappropriately, or failed to respond to, a prisoner's complaint or grievance, does not establish that the officials and administrators were involved in the underlying unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (same); see also Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials named in a prisoner's § 1983 action who were sued "based on their failure to take corrective action when grievances or investigations were referred to them").

Moreover, prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill, 372 F.3d at 236 (discussing Durmer, 991 F.2d at 69). There is no doubt that Twigg was under the care of medical experts. Therefore, Twigg's claims against defendant Sabol, which solely arise out of her alleged failure to satisfactorily resolve his complaints regarding pain and suffering, will be dismissed for lack of personal involvement.

## IV. Leave to Amend

The court concludes that leave to amend is appropriate with respect to the bulk of Twigg's claims. When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). In the matter *sub judice*, at least one of Twigg's claims—his claim against all defendants pursuant to RLUIPA—is *legally* flawed and thus incurable. As such, the court will dismiss that claim with prejudice. However, the court will permit Twigg to amend the balance of his complaint in attempt to cure the manifest factual deficiencies identified herein.

## V. Conclusion

For the reasons set forth above, defendants' motions (Docs. 27, 34) to dismiss will be granted. An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
        Christopher C. Conner, Chief Judge
        United States District Court
        Middle District of Pennsylvania

Dated: August 31, 2015