**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY TWIGG,** | : | **CIVIL ACTION NO. 1:14-CV-1787** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **DR. VON KIEL,** | : | |
| **PATRICIA BENNETT,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

On September 12, 2014, plaintiff Gary Twigg ("Twigg"), an inmate formerly

housed at the York County Prison, in York, Pennsylvania, filed this civil rights

action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is presently proceeding

*via* an amended complaint (Doc. 67), wherein plaintiff names as defendants Dr. Erik

Von Kiel and Patricia Bennett. Before the court is defendants' motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 69). For the reasons set

forth below, the motion will be granted.

**I.     <u>Standard of Review</u>**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)

(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is

generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

II.     **Allegations of the Amended Complaint**

Twigg alleges that between May 2012 and September 2012, while housed at the York County Prison, defendants violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  (See Doc. 67 at 2-3).  Specifically, he alleges that he received inadequate medical treatment for his gastrointestinal condition, and defendants retaliated against him for filing grievances.  (Id.)

Twigg states that he submitted several grievances to defendant Bennett.  (Id. at 3).  Defendant Bennett allegedly answered the grievances and explained that security would handle the grievances, and noted that the grievances were excessive and redundant.  (Id.)  Twigg further alleges that defendant Bennett placed him in segregation in retaliation for his complaints.  (Id.)

Twigg states that defendants prescribed Bentyl in June 2012, and additionally prescribed milk of magnesia, lactulose, and fiber, to treat his gastrointestinal illness.  (Id. at 4-5).  He alleges that the medications prescribed by defendants were "absurd and ridiculous."  (Id. at 5).

Twigg contends that defendants were aware of his condition in June 2012, but did not refer him to a specialist until September 2012.  (Id. at 4).  As a result, Twigg alleges that he developed two (2) colonic polyps.  (Id.)  Twigg also states that defendant Von Kiel did not treat him until September 2012.  (Id. at 3).

In August 2012, Twigg appeared in court at a pretrial conference and "had an excellent chance for [sic] getting the case thrown out at trial," however, because defendants allegedly failed to "medically…cure" him, he was forced to enter a plea because he was too sick to proceed in court.  (Id. at 4-5).

**III.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

**A.   Deliberate Indifference to Medical Needs**

Twigg claims that defendants' failure to provide him with necessary

medical treatment during his incarceration violates his rights under the Eighth

4

Amendment.[1]  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).  To establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).  In the instant action, defendants concede that Twigg has a serious medical condition.  (Doc. 70 at 5).

---

[1] Twigg states that, at all relevant times, he was "simultaneously a pretrial detainee and sentenced prisoner."  (Doc. 78 at 1; Doc. 79 at 1).  Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  However, the Fourteenth Amendment provides "at least as much protection as does the Eighth Amendment," and in cases involving allegations of inadequate medical care, the Third Circuit Court of Appeals typically analyzes the both claims using the Eighth Amendment standard.  Gannaway v. Berks Cnty. Prison, 439 F. App'x 86, 89 n.2 (3d Cir. 2011); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003).  Therefore, the court will analyze Twigg's claims pursuant to the Eighth Amendment standard.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Estelle, 429 U.S. at 106; Spruill v. Gillis, 372 F.3d 218, 237 (3d Cir. 2004); Monmouth Cnty., 834 F.2d at 346.

The allegations against defendants are insufficient to state an Eighth Amendment inadequate medical care claim. Twigg submitted sick call requests, inmate grievances, and responses thereto, which confirm that Twigg was treated by the medical department on several occasions. (Doc. 77). Notably, these are the same documents submitted with the original complaint. As the court previously noted (Doc. 62 at 6), Twigg's records reveal that: (1) defendant Bennett treated Twigg for hemorrhoids; (2) Twigg was placed in a medical observation cell for his own protection to be properly observed; (3) Twigg was put on a special vegetarian diet per his request; (4) Twigg received medication regularly for his hemorrhoids and gastrointestinal pain, his stool samples were tested, and he underwent blood tests and received an x-ray; (5) defendant Von Kiel treated Twigg; and (6) Twigg underwent a consultation with a gastrointestinal specialist outside of the prison and was scheduled to undergo a colonoscopy. (Doc. 77). The documents also reveal that Twigg refused stool sample testing and refused an x-ray on two (2) occasions. (Id.)

6

It is clear that Twigg received medical care at the York County Prison.  To the extent that Twigg is not satisfied with the medical treatment and medications, such allegations, at best, demonstrate his disagreement with medical care.  Twigg acknowledges that he received medical treatment and medication at the York County Prison, though he claims that the medications were "absurd and ridiculous."  (Doc. 67 at 5).  Defendants provided Twigg with several medications to treat his gastrointestinal illness, *to wit*, Bentyl, milk of magnesia, lactulose, fiber, and Colace.  (Doc. 67 at 4; Doc. 77 at 2).  Defendants clearly did not refuse to provide medical care or medication.  Though Twigg may have preferred a different type of medication, i.e., Pepto-Bismol and antibiotics (Doc. 67 at 4, 7), such disagreement is not enough to state a § 1983 claim.  See Spruill, 372 F.3d at 235 (holding that "[m]ere disagreement as to the proper medical treatment is" insufficient to state a constitutional violation) ; Pierce v. Pitkins, 520 F. App'x 64, 66-67 (3d Cir. 2013) (inmate's allegation "that he was denied his preferred method of treatment" for abdominal and gastrointestinal illness did not state claim for deliberate indifference to his medical needs); Gause v. Diguglielmo, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation).

Twigg's claim that defendants delayed referring him to a specialist also fails to establish deliberate indifference.  See Brito v. U.S. Dep't of Justice, 392 F. App'x 11, 14-15 (3d Cir. 2010) (prison medical staff's alleged delay in referring inmate to a specialist did not "rise to the level of deliberate indifference").  The evidence reveals that Twigg received adequate treatment for his gastrointestinal condition.

He was treated by various members of the medical staff, received medication, was placed in a medical observation cell, and underwent a consultation with an outside provider. Twigg acknowledges that he received continual medical treatment, however, he contends that "seeing a nurse every time I complained is not treatment." (Doc. 78 at 3). Although Twigg may not be wholly satisfied with the treatment he received at the York County Prison, defendants' actions do not amount to deliberate indifference to a serious medical need. See Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997) ("[T]he exercise by a doctor of his professional judgment is never deliberate indifference."); see also Tenon v. Dreibelbis, 606 F. App'x 681, 686 (3d Cir. 2015) ("[A] dispute over the adequacy of the treatment or the need to pursue one course of treatment over another . . . generally fails to state a claim for relief under the Eighth Amendment.") (citing United States v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (per curiam) ("Where a prisoner had received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")).

The allegations in Twigg's amended complaint amount to nothing more than his subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. See Carpenter v. Kloptoski, No. 08-CV-2233, 2012 WL 983565, at *6 (M.D. Pa. Mar. 22, 2012) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"). Claims of medical malpractice and disagreements as to the proper course of medical treatment simply

do not suffice to satisfy the deliberate indifference standard.  See Monmouth Cnty., 834 F.2d at 346.  Courts will not second guess whether a particular course of treatment is adequate or proper.  See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).  Based on the foregoing, Twigg's amended complaint fails to articulate a plausible Eighth Amendment claim against defendants.

**B.      First Amendment Retaliation**

Twigg alleges that defendants retaliated against him based on his complaints about the medical care he received at the York County Prison.  The First Amendment offers protection for a wide variety of expressive activities.  See U.S. CONST. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With respect to the first and second <u>Rauser</u> prongs:

> Although the elements of a First Amendment retaliation
> claim remain constant, the underlying concepts that they
> signify will vary with the setting—whether activity is
> "protected" or an action is "adverse" will depend on
> context. . . . Standing in his cell in a prison, an inmate is
> quite limited in what he can say; his government jailor can
> impose speech-limiting regulations that are "reasonably
> related to legitimate penological interests."  The fact that
> certain conduct of the plaintiff must be "protected" in order
> to state a claim does not change with the setting—what
> changes is the type of conduct deemed protected in that
> particular setting.

<u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 388 (6th Cir. 1999) (quoting <u>Turner</u>, 482 U.S. at 89).  "[T]he fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates."  <u>DeHart v. Horn</u>, 227 F.3d 47, 50-51 (3d Cir. 2000) (citing <u>Pell v. Procunier</u>, 417 U.S. 817, 822-23 (1974)).  Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  <u>Id.</u> at 51 (quoting <u>Pell</u>, 417 U.S. at 822).

Twigg's allegation that he was retaliated against because he filed grievances regarding his medical care implicates conduct protected by the First Amendment sufficient to satisfy the first prong of the <u>Rauser</u> test.  <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003).  As to the second prong, Twigg alleges that he suffered adverse action in the form of being placed in segregation.  Because the time he spent in segregation as a result of the alleged retaliatory conduct could deter a

reasonably firm prisoner from exercising his First Amendment rights, the adverse action prong is satisfied.

Under the third prong of the <u>Rauser</u> test, the court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action.  The plaintiff must show that the protected activity was a substantial or motivating factor in the state actor's decision to take the adverse action.  This "motivation" factor may be established by identifying "a 'chronology of events from which retaliation plausibly may be inferred.'"  <u>Tighe v. Wall</u>, 100 F.3d 41, 42 (5th Cir. 1996) (quoting <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995)); <u>see</u> <u>also</u> <u>Goff v. Burton</u>, 91 F.3d 1188, 1191 (8th Cir. 1996); <u>Pride v. Peters</u>, 72 F.3d 132 (Table) (7th Cir. 1995).  It is plaintiff's burden to prove that defendants were motivated by retaliation.  <u>See</u> <u>Hannon v. Speck</u>, No. 87-3212, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor . . . was as he alleged.") (internal quotes and citation omitted).  Where the prisoner seeks to establish this causal link based upon the temporal proximity between the protected conduct and the alleged retaliatory act, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997); <u>Rauser</u>, 241 F.3d at 334; <u>see</u> <u>also</u> <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that temporal proximity, nearly six months, is not unduly suggestive and does not sufficiently establish any causal link).

Twigg fails to establish a causal link between filing grievances and placement in segregation, the alleged retaliatory conduct.  Defendants, members of the medical staff, are not involved in housing decisions within the prison (Doc. 70, at 7), and Twigg fails to establish that defendants had any control over his housing status. Moreover, Twigg's evidence reveals that he was placed in a medical observation cell for his own protection to be properly observed.  (Doc. 77 at 1).  Consequently, Twigg has failed to set forth facts that raise the inference that filing grievances was a substantial or motivating factor in placement in a medical observation cell.  See Swinson v. Blakely, 633 F. App'x 80, 83 (3d Cir. 2015) (finding that the inmate's act of filing grievances was a constitutionally protected act, the prison officials' act of placing prisoner in solitary confinement constituted adverse action, however the prison officials did not retaliate against prisoner for filing grievances, rather they placed the inmate in restricted housing because he was a danger to others).

Twigg also alleges that defendants denied him access to the courts because they failed to medically cure him and, as a result, he was unable to physically stand during court and was forced to enter a plea in a criminal case.  Twigg's allegation that defendants failed to cure him, which prevented him from proceeding to trial, does not constitute adverse action.  A First Amendment denial of access to the court cause of action is stated by alleging that a particular defendant: (1) interfered with; (2) a nonfrivolous attack on conditions of confinement, or the defense against a criminal charge, a direct appeal from or collateral attack on a criminal conviction, or a habeas corpus petition.  See Lewis v. Casey, 518 U.S. 343, 353 n. 3 & 355 (1996); Bounds v. Smith, 430 U.S. 817 (1977).  However, as the Supreme Court made clear

in <u>Lewis</u>, a plaintiff must demonstrate actual injury.  In other words, the inmate must allege some legal loss.  Twigg's attempt to lay the blame on defendants for acceptance of a plea in his underlying criminal case is unavailing.  In failing to establish actual injury or some legal loss, Twigg fails demonstrate that defendants' conduct imposed a substantial impact on him.  <u>See</u> <u>Gill v. Tuttle</u>, 93 F. App'x 301, 303-04 (2d Cir. 2004) (finding that to establish a retaliation claim, inmate must allege adverse action that imposes a substantial impact on inmate).  Consequently, the court will grant defendants' motion to dismiss Twigg's First Amendment retaliation claim.

## IV.    <u>Leave to Amend</u>

When a complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." <u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  <u>Foman v.Davis</u>, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  Twigg was previously provided the opportunity to amend his complaint to correct the factual deficiencies identified by the court (Doc. 62 at 17), and this action is proceeding on the amended complaint.  The court finds that the amended complaint is strikingly

similar to the original complaint, <u>compare</u> (Doc. 1) <u>with</u> (Doc. 67), and, thus far,

Twigg has been unable to adequately set forth a claim for relief.  Allowing Twigg

another opportunity to amend would be futile.

## V.  <u>Conclusion</u>

For the reasons set forth above, defendants' motion (Doc. 69) to dismiss will

be granted.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    August 9, 2016